Lamar TANN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 205, 2010.

Supreme Court of Delaware.

Submitted: May 4, 2011.

Decided: June 13, 2011.

---

Jennifer–Kate Aaronson, Esquire, (argued) of Aaronson, Collins & Jennings,

LLC, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esquire (argued), Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this criminal appeal we consider whether, after stopping a car for a seatbelt violation, the police were justified in ordering appellant out of the car, arresting him, and searching the car. The Superior Court, applying settled law, held that the police may not extend the scope of a traffic stop beyond the time necessary to accomplish the purpose of the stop. The trial court found, as a matter of fact, that appellant's behavior and other information obtained by the police supported a reasonable suspicion that appellant was involved in criminal activity. Accordingly, we find no abuse of discretion, and affirm the trial court's denial of appellant's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 20, 2009, Officers Timothy Golden and Roger Jackson, of the New Castle County Police, were patrolling the area around Sixth Avenue and East Hillview Avenue in New Castle, Delaware. Golden and Jackson were on the lookout for a white Mercury Marquis. Another officer had received a tip from a confidential informant that drug sales were being conducted in that vicinity from such a car. The other officer alerted Golden and Jackson. A white Mercury Marquis drove by a few minutes later, and Golden noticed that the front seat passenger was not wearing a seatbelt. The officers stopped the car. Golden testified that the reason for the stop was the seatbelt violation.

There were three people in the car—Lamar Tann in the driver's seat, Quinton Turner in the front passenger seat, and Clyde Holmes in the back passenger area. Golden approached the driver's side of the car and asked Tann for his license, registration and proof of insurance, which Tann provided. Golden noticed that Tann was shaking uncontrollably, and Golden attributed the shaking to nervousness. He also saw a box of plastic sandwich baggies on the back seat. Jackson approached the passenger side of the car. He asked Turner and Holmes for identification, but only Holmes had an ID. Turner told Jackson that he was carrying $700 in cash.

Golden returned to his patrol car and ran computer background checks on Turner and Tann. The background checks revealed that Turner was wanted on an outstanding arrest warrant. Tann had no outstanding warrants, but he was listed as having been arrested in 2003 for possession of a weapon with a removed serial number. Other officers, who arrived after the traffic stop, arrested Turner. After Turner's arrest, Jackson asked Tann to step out of the car. Immediately before Tann emerged from the car, he made a sharp movement as if he were reaching for something under his seat. Jackson feared that Tann was reaching for a gun, so he handcuffed Tann.

Golden then asked Holmes to step out of the car. As Holmes did so, Golden saw that one of his pockets was bulging to such an extent that Golden could see cocaine inside the pocket. He arrested Holmes. In a search incident to arrest, the police discovered four bags of cocaine, a razor blade, and small plastic bags in Holmes' possession. In their first search of the car, the police discovered 44 small plastic bags of

cocaine under the driver's seat. In a subsequent search of the car, the police found a digital scale with white residue on it.

Tann moved to suppress the evidence recovered from the car. The Superior Court denied the motion. Tann was convicted of trafficking in cocaine and related offenses. This appeal followed.

## DISCUSSION

■■■■ We review the denial of a motion to suppress for abuse of discretion.[1] Under the Fourth Amendment of the United States Constitution and Article I, § 6 of the Delaware Constitution, a traffic stop is a seizure of the vehicle and its occupants.[2] The stop must be justified, at its inception, by a reasonable suspicion of criminal activity, and the scope of the stop must be reasonably related to the stop's initial purpose.[3] During a routine traffic stop, the police may request the occupants of a car to provide identification,[4] and to exit the vehicle.[5] But, "any investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop must be supported by independent facts sufficient to justify the additional intrusion."[6]

Tann tacitly concedes that the traffic stop was valid. After Tann provided his identification, however, he argues that the police lacked a reasonable articulable suspicion of any other criminal activity that would justify continued detention. We disagree. The following facts, developed during the stop, provided a reasonable articulable suspicion that Tann was involved in drug-related, criminal activity: 1) Tann was nervous and his hands were shaking uncontrollably; 2) there was a box of plastic bags on the back seat of the car, and that type of bag is used in packaging drugs; 3) Turner said that he had $700 in cash, and such a large amount of cash suggests drug dealing; 4) Tann had a prior weapons arrest, and there was an outstanding warrant for Turner; and 5) Tann reached underneath his seat immediately before getting out of the car, which suggested that there were drugs or a weapon stashed under the seat.

■■■■ Tann also contends that the police lacked probable cause to arrest him. He argues that the tip about the white Mercury Grand Marquis did not establish probable cause because it did not come from a reliable informant. Probable cause is established when the totality of the circumstances, viewed in light of the officer's training and experience, "present(s) facts which suggest that there is a fair probability that the defendant has committed a crime."[7] Here, in addition to the tip, the police knew that Turner had a large amount of cash, consistent with dealing drugs; Holmes had a large amount of cocaine, consistent with dealing drugs; there were plastic baggies in the car, con-

1. *Sierra v. State,* 958 A.2d 825, 828 (Del. 2008).

2. *Caldwell v. State,* 780 A.2d 1037, 1045–46 (Del.2001). We do not address any claim under the Delaware Constitution, as it was not separately briefed and argued. *Ortiz v. State,* 869 A.2d 285, 291 n. 4 (Del.2005).

3. *Ibid.*

4. *Loper v. State,* 8 A.3d 1169, 1172–74 (Del. 2010).

5. *Id.* at 1174 ("the police may order the driver or a passenger to exit the car after a valid traffic stop, and that order is not a 'seizure' under the Fourth Amendment.").

6. *Caldwell v. State,* 780 A.2d at 1047.

7. *Thomas v. State,* 8 A.3d 1195, 1197 (Del. 2010).

sistent with packaging drugs; and Tann reached under his seat, consistent with hiding drugs or retrieving a weapon. These facts establish probable cause that Tann was participating in illegal drug activity.

 Finally, Tann argues that the police violated his constitutional rights by conducting a warrantless search of the car. He relies on the United States Supreme Court decision in *Arizona v. Gant*,[8] but, *Gant* is inapposite. In that case, the defendant was stopped and arrested for driving with a suspended license. After the defendant was handcuffed and locked in a patrol car, the police searched the defendant's car and found cocaine. The *Gant* court held that the warrantless search was unreasonable because there was no possibility that the defendant could gain access to the vehicle, and no reason to believe that any evidence related to the crime (driving with a suspended license) would be discovered. Here, although the three men could not gain access to the car, there was every reason to believe that evidence related to the crimes (trafficking in cocaine and related offenses) would be discovered in the car. As noted above, there were baggies in the car; one of the occupants of the car had a large quantity of cocaine in his pocket; another had a large quantity of cash in his pocket; and Tann reached under the seat just before he exited the car. Thus, it was reasonable to believe that additional evidence of drug activity could be hidden in the car.

### CONCLUSION

The Superior Court correctly denied Tann's motion to suppress because all of the officers' actions were justified. Based on the foregoing, the judgment of the Superior Court is affirmed.

8.  556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).